Good morning and welcome to the Ninth Circuit. Before we begin, Judge Nelson and I would like to welcome Judge Sessions who is here helping us out today from the District Court of Vermont. Welcome and thank you for coming. Thank you very much. A little housekeeping. We've got one case submitted on the briefs, United States v. Cho, or Cho, A-C-H-O-E. The rest of the cases will be argued. The first two cases will be argued in part remotely. Those cases are United States v. Fuentes-Galvez and then United States v. Garduna-Diaz. First one, U.S. v. Fuentes-Galvez, when you're ready. Thank you, Your Honor. May it please the Court, Lee Tucker for Juan Antonio Fuentes-Galvez. Thank you very much for accommodating this appearance by videoconference. Can you hear me? We can hear you and we can see you. Can you hear and see us? Yes, I can. Thank you. I will attempt to reserve two minutes for rebuttal. Thank you. We've got a clock here that counts down. You're probably just going to have to rely on your stopwatch or whatever. We'll try to help. Actually, I have a clock but it's not counting down. We'll try to help you. Thank you. As for Mr. Fuentes-Galvez, the Court requested advocacy in this case after its independent review of the record revealed some disturbing inadequacies in the plea colloquy, among other things. In particular, the Court noted a failure of this judge and a pattern of this judge in failing to inquire into competency-related questions, failing to inquire into whether the plea resulted from force, threats, or promises other than those of the plea agreement, and in general, inquiries that are required by the rule and, as the Court said, essential in determining that the guilty plea is, in fact, voluntary. Can I ask a question about that? I think your clearly we have a magistrate judge who needs a little bit of counsel on how to do these things properly. The question is, how much does that affect this overall guilty plea? It just strikes me that there was almost no question that these defendants were going plead guilty. How much can we as a Court delve into that and the circumstances around that or do we just say, yeah, you failed under Rule 11, therefore, we've got to send it back and you've got to read these questions properly? Well, Judge Nelson, this is unlike the other cases that have been presented in the briefs. It's quite unlike Domingo's Benitez, where the Supreme Court dealt with a Rule 11 violation, which was a single Rule 11 violation involving a failure to advise the defendant that he would not be able to withdraw his guilty plea should the sentencing judge not follow the sentencing recommendation. And in that case, of course, the Supreme Court said, look, what we're going to do is just look at whether or not there's a reasonable probability he would have pleaded anyway. Here, we have a completely different set of circumstances. We have not one Rule 11 violation, but multiple Rule 11 violations and a complete dearth of any indication as to competency. Well, we have some indications that there may not have been competency, but there's nothing to indicate that he was competent, that he understood his rights, that it was voluntarily entered into. And so under these circumstances, I would point out that the Domingo's Benitez Court was quite explicit in saying that they were not dealing with an allegation of a due process violation. They were dealing solely with a Rule 11 problem. And here, we have all of that together under very unique circumstances. What does the fact that there's a due process violation allege, why does that make a difference? Your Honor, it would change the standard of review, and it would heighten the level of the inquiry and the gravity of the violation. Voluntariness and competency, the Fifth Amendment, the due process protections are at the core of what is required for a valid guilty plea for good reason. And this Court has reiterated that post Domingo's Benitez, that the purpose of Rule 11 compliance is to ensure that the guilty plea is knowing and voluntary. So the Court would look at it... But you've got a plain error question here. So a part of a plain error is whether or not, the issue is whether or not the defendant would have pled guilty regardless of the violation. Does the fact that there's a due process allegation, and in fact, because there is an allegation under B-2 as opposed to B-1, is it necessary, really, that the defendant address the fact that he would probably not have pled had he been notified of these rights? We don't believe that showing is necessary, but if the Court were to disagree, we believe we make that showing as well. We do not believe it is necessary. And I would point to U.S. v. Adams, a Ninth Circuit case, in which there was a reversal based on a failure to advise as to a mandatory fine. As you get into this particular case, I was looking at B-2, the language of B-2 and how it differs from the language in B-1. In B-2, essentially, it says that before accepting a plea of guilty, the Court must establish the fact that this is voluntarily and knowingly made. That is the Court's obligation. And what I've always thought as a district court judge is that when you go into a change of plea, your obligation is to make sure that it is proven that this person knows what the person is doing and also is voluntarily entering a plea. And if, in fact, you cannot make that assessment based upon the record, you cannot accept the guilty plea. That makes it a little bit different than the case in which B-1, you have plain error and you have to show that despite these errors, you would have pled guilty anyway. Or just the opposite. That's an excellent point, Your Honor. Yes, I agree with that. And that showing was not made here under B-2. Your point is that it does not become significant to address the question as to whether the defendant would or would not have pled if it's a due process violation. The judge has to make a determination on the record in open court that, in fact, it's voluntary and it's knowing. Is that your position? Yes, that is my position. Absolutely. And also that if the court or a court were to require the other showing, we also could make that showing here. That there's a reasonable probability he would not have pleaded. So, yes, we agree with you. He shouldn't have to make that showing. But even if he did need to make that showing, he could make that showing here. I mean, the facts of this, I mean, as you, I think you're all three very familiar with the failings of the plea colloquy and the rapidity in which the advisals that were given were given and the failure to establish that it was knowing and voluntary. But in addition to that... Can I ask about that? And if you don't know this, that's fine. Is this an ongoing problem? Is it still going on? Or is this something that's been corrected by the magistrate judge here? Your Honor, this is an ongoing problem. In fact, the next case you'll hear involves virtually the... Well, it does. But again, these all happened before. I guess the question is, is there benefit in sending this back solely so that the magistrate judge gets the clue that I got to do this right and I got three judges, at least, who are watching me and making sure I do. This isn't hard to do. It isn't hard to do. And so do we make sure that she just gets it right? Or is this been resolved in ongoing cases? Your Honor, this particular magistrate judge is on senior status of sorts, but does still hold court about once a week and take plea colloquies. I think another concern, in addition to his pattern here, is the message it gives to other judges who may have the appropriate practice of spending 30, 35, 40 minutes ensuring understanding. And then they look at their colleague who's doing it in five and says, oh, well, why should I bother if the court is going to allow this abbreviated practice to stand? I do see I have two minutes left. I could stop now and save my time. Why don't you stop now. We'll hear from the government. You'll have a chance to respond. And I have a feeling we'll be covering much the same ground in the next case. Thank you, Your Honor. Good morning, Your Honors. May it please the court, I am Tanya Miller from the District of Arizona, and I'll be representing the government in connection with these two matters. Okay. Did you start the clock? There we go. Okay. Thank you. Here, the court should affirm, because the defendant has not shown that plain air flowed from the alleged Rule 11 violations in this case. Now, there were lawyers from both sides. It's not just the defendant's job to make sure this goes right. It's the government's job to make sure this goes right. So, we've got two lawyers acting as potted plants. What's going on? Your Honor, the record doesn't tell us why no objection was made. But we know that we had lawyers on both sides. They heard this extremely abbreviated and nobody says anything. Your Honor, the record confirms that no one made an objection. I guess, to put a finer point on it, the government has a different duty. And the government seeing this inadequate plea colloquy, it's so easy. Just speak up. I don't think anything would have changed. And so, that's what's kind of frustrating about getting this case, is we can send it back and make them do it properly, but the government could have stepped up and just said, hey, Your Honor, could you ask some of these additional questions. Well, and Your Honors, I don't have information as to why the government's attorney who was on this case, why they didn't object. And we obviously don't have that same government attorney here in front of us today. You do not, Your Honor. That government attorney decided to stay home in Arizona. So, aside from Judge Velasco, is this a continuing problem along the border? I was visiting Judge in New Mexico, and the pressure in taking changes of plea and moving the cases along is enormous. And I wonder if this transcript is symptomatic of a broader problem in Arizona, or perhaps New Mexico, or San Diego, where you have so many changes of plea that people shortcut the Rule 11 colloquy and leave out important aspects. Well, Your Honor, I can't speak to the record of the plea colloquy in all the cases, nor any general trends, but I can say that in our district, we do have a large criminal docket, and we do do a lot of change of pleas on a daily basis. Beyond that, I can't make any other representations. Well, you may well be aware of this. This has been an ongoing problem in various sort of manifestations or iterations. I remember not too many years ago, the practice along the border in the federal courts was to do a mass change of plea, with many of the defendants standing there being questioned en masse, and we struck that down as you can't do that. I'm very sympathetic to the logistical problems, but there are some underlying requirements. There are, Your Honor, and I recall some of those cases were addressed in the briefing by the parties. I believe that the Ninth Circuit had said that one of the larger concerns is that the defendants do have to be addressed personally in order to ensure that they are doing their changes of pleas. And that happened only after the Ninth Circuit stepped in and said you had to do it. It's true, Your Honor, but I would point out that in this case, the defendant was addressed personally in the two cases, and the magistrate did ascertain. But addressed personally in a very abbreviated fashion, the government concedes that this was an inadequate plea, correct? The government would concede that here, too, the defendant or the magistrate judge did omit two Rule 11 violations. Specifically, the, or did admit, I'm sorry, two advisements, specifically the advisement concerning the plea provision concerning the waiver of the collateral attack right, as well as the advisement concerning the guidelines, departures therefrom, and the sentencing factors that the district court was obliged to consider at the time of sentencing. So how many of these cases do we have in the pipeline? If we send these two back, how many more are going to get sent back? Your Honor, I'm afraid I can't answer that question. I don't know how many cases are in the pipeline. But again, I can assert that we do have a very large criminal docket, and we do have a number of changes of pleas that occur on a daily basis in our courthouse. That's incredible pressure. I'm going to ask you about your interpretation of B-2, as opposed to B-1. B-2 basically puts the responsibility on the trial judge, the district court judge or the magistrate judge, to actually make a determination on the record in open court, after addressing a defendant, as to voluntariness, as well as knowing waiver of constitutional rights. And that is a requirement of the judge. So if the record does not establish voluntariness or knowing plea, then that's it. The judge can't take the plea. And as a result, whether the defendant would have pled anyway becomes irrelevant. Do you agree with that interpretation of B-2 and or the application of the due process clause to these changes of plea? I would agree with the latter, Your Honor. That is a combination of the due process clause, as well as B-2. B-2 speaks to the voluntariness of the plea agreement. And I would point out that in this case, the magistrate judge personally addressed the defendant and asked him if he was pleading guilty voluntarily. And on the record, the defendant asserted that he did. Additionally, the magistrate asked if the motivation for pleading guilty was that he was guilty. And again, on the record and under oath, the defendant asserted that, yes, that was his motivation for doing so. Didn't he ask that all in the same sentence? He did ask that all in the same sentence. So it wasn't two separate sentences? It was not two separate sentences. Two separate yeses, yeah. Correct. It was just one yes. So could I just clarify what your answer is, though? When you say the due process clause and B-2 are sort of combined, what you're suggesting is that unless the record establishes voluntariness and knowing entry of a plea, it becomes irrelevant as to whether the defendant would have continued to plead guilty because a judge could not accept the plea. Do you agree with that? Your Honor, if I may clarify, when I mentioned the combination of the two, I was pointing out that in this case, the arguments overlap. And therefore, in this case, it appears that they do. However, you will remember that the requirements of Rule 11 are actually more stringent than the requirements for due process, and there's case law to say as much. And that for the requirements for due process, they do not require the judge or the court to get into such an extensive inquiry as to the defendant's understanding. Look, and I digress. You go to voluntariness, and you say the statement that the defendant made, he's voluntarily pleading guilty because he is guilty. How about the knowing part? The knowing part is established when you ask a defendant how far have they gone through school? Are they using drugs? What influence they've had? Coercion or promises of any kind? All of those go to a knowing waiver. And in this particular case, there is absolutely no evidence really of who this defendant was, what he was subjected to, what he was suffering from at the time of the change of plea, et cetera. So how could you argue that this is a knowing waiver of Rule 11 rights when, in fact, who knows what influence he was under at the time he entered his plea? Well, Your Honor, I would point out that there actually is evidence in this case in the record that we know that it was a knowing change of plea, or actually by the time that the district court asked, would you like to withdraw your change of plea and proceed instead to the district court? And there are provisions within the plea agreement avows which state that I am not pleading guilty because of threats or because of duress or because of a promise outside these plea agreements. So that is in the record that the defendant has avowed by and through his oath and representations in court that that is the case. Additionally, you have to consider the defendant's demeanor when he was in court and during all the opportunities he had to engage with both the magistrate judge and the district court judge. That's sort of part of my question, which is how much can we take that into account? I mean, it seems to me that the demeanor, it's hard to defer to the demeanor because if it's not on the record, as I think Judge Sessions was suggesting, then, I mean, do we just defer and say, well, he saw immediately, we're going to assume that the magistrate judge or the district court judge thought that he was educated. I mean, it's got to be on the record. How can we review it and defer if it's not on the record? Precisely, Your Honor. The burden is on the defendant to show that there was some evidence in the record to support a reasonable probability that things would have been different. And there is nothing on the record. Is that true for a Rule 11 violation in the same way that's true for a due process violation? It's the position of the government that the plain air standard applies as to both those analyses, yes. Well, but even if it's the same standard of plain air, I just wonder if the evidence that could support plain air would be different depending on whether it's a due process violation or a Rule 11 violation. I believe that is the case, Your Honor. I see that my time is concluding. If the panel has no further questions for me, I would ask to affirm because the defendant has not met his burden in this case. Okay, thank you. And I think we may have an opportunity for a conversation in the next case. Yes, Your Honor. Okay. Thank you. You've got about two minutes on this one. Thank you. I do have some responses regarding B-2, etc., but I think I will save those for the next argument and use my remaining time to briefly touch on the sentencing error and the request for remand to a new district court judge for Mr. Fuentes. As we discussed in the briefs, the sentencing procedure here was, we contend, substantively and procedurally in error. It was the result of the judge unduly emphasizing deterrence, saying, in fact, that it was 90% of the equation and more than doubling the prior sentence that the defendant had received. We would ask that upon remand, should it be remanded, that a new district court judge be assigned. The judge who did the sentencing wasn't the assigned judge. He filled in on very short notice, but he did discuss at length his entrenchment in feeling that there needed to be this primary and perhaps exclusive emphasis on deterrence. So we would ask for remand to a different judge. The concern I have with that argument is you're sort of arguing that that district court judge can't handle any of these cases because he's entrenched. I mean, how do we distinguish this from any other cases he may handle? Well, his avowal that he was entrenched really was due to the facts of this case. And I would note also that Mr. Fuentes had previously been sentenced by Judge Jorgensen, who was the assigned judge to this case as well. So she would be more familiar with the case. Judge Burry, who did the sentencing in this case, is a senior judge and stepped in at the last minute to do the sentencing here. But we ask for remand to a different judge. Well, it is true that he did not go over all of the 3553A factors in assessing this particular sentence. But I don't think any court has actually required judges to actually mention all of the various factors under 3553A. I mean, you can assume that a judge in today's world knows what 3553A factors are, and he picked one of the important factors, which related to a number of factors, seriousness of the offense, holding people accountable for their conduct, etc. Do you really think that he has to go through all of the elements of 3553A to satisfy your standard? No, Judge Sessions, I agree completely. It's well established they don't have to do a checklist of every aspect of the guidelines. But in this case, the record indicates that he didn't look at any of the other factors, including the one mitigation argument raised by defense counsel that Mr. Fuentes had served an additional seven months beyond his prior sentence. The judge didn't address that, did not address any other factors. In fact, the only thing we heard from Mr. Fuentes in this case, other than the yeses at the change of I'm in failing health. The judge did not inquire into that. There was no follow-up on that. So I think in this circumstance, it would not be fair to assume that he considered 3553A as he should have. Okay. Thank you. Thank you very much. United States v. Fuentes Galvez, now submitted. Don't go away. United States v. Garduno Diaz.
judges: W. Fletcher, R. Nelson, Sessionsiii